UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

THOMAS J. HARRIS,

                Plaintiff,

                            Case No. 2:25-cv-34

v.

                            Honorable Sally J. Berens

KIRK MAHAR et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604-05 (6th Cir. 1997) (overruled on other grounds).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a

court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that the Defendants are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the Defendants are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The

record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims with prejudice for failure to state a claim on which relief may be granted. The Court will dismiss Plaintiff's state law claims because the Court declines to exercise supplemental jurisdiction over them.

### Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC, the MDOC Office of Legal Affairs, MDOC Director Heidi Washington, MDOC Office of Legal Affairs Manager Richard Russell, and the following KCF personnel: Warden Jeff Howard, Grievance Coordinator

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503-04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Robin Voorhees, and KCF mailroom officials Kirk Mahar and Shannon Jones. Defendants Mahar and Jones are sued in their individual capacities. The remaining Defendants are sued in their official capacities.

Plaintiff's "complaint" reads more like a brief than a complaint. It is filled with legal citations, arguments and conclusions, despite the Court's instruction that "THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS." *See* Form to be used by a prisoner in filing a complaint under the Civil Rights Act, 42 U.S.C. § 1983, https://www.miwd. circ6.dcn/sites/default/files/doc/amended%20prisoner%20civil%20rights%20form.pdf (last visited May 20, 2025).

Plaintiff alleges that on August 6, 2024, non-party KCF Corrections Officer Woods was passing out regular mail to Plaintiff. (Compl., ECF No. 1, PageID.11, ¶ 15.) Upon opening the mail, Plaintiff discovered that, inside the envelope containing his mail, was a photocopy of the original envelope. (*Id.* ¶ 16.) The original envelope included the following: "Confidential Information/Attorney Client Privilege Attached/Attorney Work Product." (*Id.*) Also included was an unexpected sworn affidavit from Jovan Calhoun. (*Id.* ¶ 17.) Plaintiff reports that the affidavit was "new evidence related to Plaintiff's criminal case." (*Id.* ¶ 18.) Plaintiff attaches to his complaint a document indicating that he received the affidavit "by way of" ACS Professional Investigations.[2] (Kite to KCF Mailroom, ECF No. 1-1, PageID.26.) Plaintiff concluded that the

---

[2] Plaintiff has attached to his complaint the kite to the mailroom and several documents relating to his subsequent grievance. (ECF Nos. 1-1 through 1-6.) The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g., Hogan v. Lucas*, No. 20- 4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to [plaintiff]'s complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)); *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had

mailing was "legal mail" and, thus, should not have been handled as regular mail. (Compl., PageID.11–12, ¶ 19).

Plaintiff sent a kite to Defendants Jones and Mahar to determine why the mailing had been handled as regular mail. (*Id*.; Kite to Mailroom, ECF No. 1-1, PageID.26.) Plaintiff received no response. (Compl., PageID.11–12, ¶¶ 19–20.) Plaintiff filed a grievance. (*Id*. ¶ 20.)

The grieved parties—Defendant Mahar, Jones, the MDOC, and the MDOC Office of Legal Affairs—failed to timely respond at Step I. (*Id*.) Plaintiff proceeded to Step II.

On October 24, 2024, Defendant Howard signed the Step II response, finding in Plaintiff's favor:

> Grievant alleges that the mailroom mishandled his legal mail, and it was not processed properly as stated [in] PD 05.03.118.
>
> Upon speaking with the mailroom staff, the legal mail in question should have been process through the Control Center and signed for. Mailroom staff delivered the legal mail as regular mail.
>
> Your Step II appeal has been reviewed. Grievant alleges that his legal mail was not process properly as set forth in PD 05.03.118 Prisoner Mail. PD 05.03.118 Prisoner Mail Requiring Special Handling [¶] LL, the mail in question should have been searched with the prisoner present, not sent as regular mail.
>
> Lt. K. Jurich has reminded the KCF Mailroom of the importance of this process.

(Step II Grievance Response, ECF No. 1-6, PageID.37.)

Despite having prevailed on his grievance, Plaintiff appealed the Step II response. (Grievance Appeal Form, ECF No. 1-6, PageID.39.) Defendant Russell rejected Plaintiff's Step

---

received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim). "When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

III grievance because Plaintiff had failed to attach the Step I response. (Step III Grievance Response Form, ECF No. 1-6, PageID.38.) As Plaintiff notes, however, he never received a response at the first step. (Compl., ECF No. 1, PageID.13, ¶ 26.)

Plaintiff contends that Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights, as well as a number of federal criminal statutes, state criminal statutes, Plaintiff's due process rights, 42 U.S.C. §§ 1985 and 1986, the MDOC policy directive regarding prisoner mail, the MDOC employee handbook, and the MDOC policy directive regarding prisoner grievances, (*Id.*, PageID.13–15, ¶¶ 30, 33–34.) Plaintiff seeks damages in the amount of $200,000.00.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Defendants MDOC and MDOC Office of Legal Affairs

Plaintiff may not maintain a Section 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff has failed to state a claim against the MDOC on which relief may be granted.

Because the MDOC is not a person subject to suit, the MDOC Office of Legal Affairs, as a smaller subdivision within the MDOC, is also not a person subject to suit under Section 1983. *See Stewart v. Poplawski*, No. 4:23-cv-12965, 2024 WL 129348, at *2 (E.D. Mich. Jan. 11, 2024) (concluding that "governmental agencies, such as the MDOC and its subdivisions, are not persons or legal entities subject to suit under § 1983," citing *Anderson v. Morgan Cnty. Corr. Complex*, No. 15-6344, 2016 WL 9402910, *1 (6th Cir. Sept. 21, 2016) and *Harrison*, 722 F.3d at 771). Thus, Plaintiff has also failed to state a claim on which relief may be granted against the MDOC Office of Legal Affairs.

## B.    Claims for Damages against Individual Defendants in their Official Capacities

Plaintiff sues Defendants Voorhees, Howard, Washington, and Russell in their respective official capacities only, and he seeks only monetary damages. (ECF No. 1, PageID.5–6, 8–10, 22.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). As noted above, the MDOC is immune from suit under the Eleventh Amendment and not a "person" who may be sued under Section 1983 for monetary damages. Plaintiff may not skirt that limitation by seeking monetary damages against Defendants Voorhees, Howard, Washington, and Russell in their official capacities. *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (noting that "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment," and

"[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant" (internal quotation marks, citation, and footnote omitted)). Any claim for monetary damages against Defendants Voorhees, Howard, Washington, and Russell in their official capacities fails to state a claim on which relief may be granted.

### C.    Vicarious Liability

Plaintiff alleges that Defendants Howard, Washington, and Russell are somehow vicariously liable for the actions of other Defendants. (Compl., ECF No. 1, PageID.8–10, ¶¶ 8–9, 11.) Government officials may not be held liable under Section 1983 for the unconstitutional conduct of their subordinates based on a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)).

Here, the factual allegations in the complaint are insufficient to show that Defendants Howard, Washington, or Russell encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. And any conclusory allegations of supervisory responsibility are insufficient to show that Defendants Howard, Washington, or Russell were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Therefore, Plaintiff fails to state a Section 1983 vicarious liability claim upon which relief may be granted against Defendants Howard, Washington, or Russell.

### D.    Insufficient Allegations of Conspiracy

#### 1.    Conspiracy Generally

A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). And a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565-66 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *see also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not specifically allege that any "agreement" or "plan" existed between Defendants. (*See generally* Compl., ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory.

Plaintiff uses some form of the word "conspire" 12 times in his complaint; he also uses some form of the word "communalize" seven times. Other than those references, however, Plaintiff alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective.[3] Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant may have played some role in either handling this one piece of mail or addressing the grievance that followed. However, as the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Therefore, because Plaintiff does not allege facts to show an agreement among Defendants, Plaintiff fails to state a plausible Section 1983 civil conspiracy claim on which relief may be granted.

---

[3] That shortcoming is also fatal to any state law claim for civil conspiracy. To establish civil conspiracy under Michigan law "requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Courser v. Allard*, 969 F.3d 604, 622 (6th Cir. 2020) (internal quotation marks and citation omitted). The claim "must be pled with some degree of specificity— not merely vague or conclusory allegations." *Id*. (internal quotation marks and citation omitted). Plaintiff offers no factual allegations regarding concerted action.

## 2.    Conspiracy under Sections 1985 and 1986

In the introduction to his complaint, Plaintiff makes passing reference to his claim for damages under 42 U.S.C. §§ 1985 and 1986. (Compl., ECF No. 1, PageID.6, ¶ 1.) Plaintiff refers to Section 1985 again in a footnote near the end of his complaint. (*Id.*, PageID.19.) The footnote, however, merely lays out the law regarding the statutory section; it does not include allegations of fact that show how any of the Defendants violated the statute.

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[4] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) that causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff fails to allege sufficient facts to suggest that Defendants' alleged actions were motivated by racial or class-based animus. Therefore, Plaintiff has failed to state a claim under Section 1985 on which relief may be granted.

---

[4] Subsections (1) and (2) of Section 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

Plaintiff's claim under Section 1986 fails because he fails to state a conspiracy claim under Section 1985. The cause of action under Section 1986, by its terms, is premised on the violation of Section 1985. Because Plaintiff fails to state a claim under Section 1985, his claim under Section 1986 fails as well. *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that Section 1986 is derivative and conditioned on establishing a Section 1985 violation); *Browder v. Tipton*, 630 F.2d 1149, 1154 (6th Cir. 1980) (same).

### E.    Claims for Violations of Federal Criminal Statutes

Plaintiff contends that Defendants have violated several federal criminal statutes. Plaintiff makes specific reference to the following: impeding and obstructing legal mailing, aiding and abetting mail fraud, conspiring to commit or to defraud the United States, obstruction of mails, obstruction of correspondence, and delay or destruction of mail or newspaper.

In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court explained the limits of the remedy offered by Section 1983 for violations of federal criminal laws:

> Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." We have held that this provision safeguards certain rights conferred by federal statutes. *Maine v. Thiboutot*, 448 U.S. 1 (1980). In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law. Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989).

*Blessing*, 520 U.S. at 340 (parallel citations omitted). But the federal criminal *laws* on which Plaintiff relies do not provide him *rights*. "[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General." *Fieger v. U.S. Atty. Gen.*, 542 F.3d 1111, 1116 (6th Cir. 2008) (internal quotation marks and citation omitted). Plaintiff is effectively attempting to pursue federal criminal charges against Defendants. He has no authority to do so. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

There are circumstances where a statute that defines a crime and sets out criminal penalties also expressly provides a civil remedy. Moreover, there are circumstances where the courts might imply a private civil remedy. As the Sixth Circuit has noted, however, "[w]e do not casually, or for that matter routinely, imply private rights of action in favor of the victims of violations of criminal laws . . . [q]uite the opposite is true . . . ." *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 642 (6th Cir. 2018). "[T]he general rule is that a private right of action is not maintainable under a criminal statute." *American Postal Workers Union, AFL-CIO, Detroit Loc. v. Indep. Postal Sys. of Am.*, 481 F.2d 90, 93 (6th Cir. 1973). In cases "where there is a 'bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone,' a private cause of action will not be inferred." *Marx v. Centran Corp.*, 747 F.2d 1536, 1549 (6th Cir. 1984) (quoting *Cort v. Ash*, 422 U.S. 66, 80 (1975)).

Plaintiff has not alleged that the federal criminal statutes he cites authorize a private right of action, and the Court has found no authority to support such a claim. Accordingly, Plaintiff has failed to state a claim for violation of federal criminal statutes on which relief may be granted.

### F.    Federal Claims Premised upon State Laws, Regulations, or Policies

Plaintiff cites state criminal statutes that he argues Defendants have violated, including the following: using a computer to commit a crime, criminal conspiracy,[5] false pretenses, forgery, uttering and publishing a forgery, and gross fraud or cheats at common law. Specifically with regard to state criminal statutes, the Sixth Circuit has noted that, "[i]n Michigan, a criminal statute must expressly create a private cause of action, or one must be inferred from a lack of adequate means of enforcement." *Courser v. Allard*, 969 F.3d 604, 619 (6th Cir. 2020). Plaintiff has not

---

[5] In Plaintiff's complaint, he sometimes includes the incorrect Michigan Compiled Laws Chapter number: Plaintiff uses 780 when it should be 750. (Compl., ECF No. 1, PageID.15, ¶ 34.) That is the case for criminal conspiracy, false pretenses, and uttering and publishing a forgery.

alleged that the criminal statutes he cites authorize a private right of action, and the Court has found no authority to support such a claim.

Additionally, Plaintiff claims that Defendants have violated—or are otherwise liable under—the following State of Michigan civil authorities: the Michigan Constitution of 1963, Art. §§ 1, 2, 16, and 17;[6] Mich. Comp. Laws § 600.2956, Mich. Comp. Laws § 600.6304, and the Elliot-Larsen Civil Rights Act; MDOC Policy Directive 05.03.118, Prisoner Mail, MDOC Policy Directive 03.03.130, Humane Treatment, Living Conditions for Prisoners, MDOC Policy Directive 03.02.130 Prisoner/Parolee Grievances, MDOC Policy Directive 05.03.116, Prisoners' Access to the Court, and MDOC Policy Directive 02.03.107, Code of Ethics and Conduct-Employees; and the state common-law tort of negligence.

Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law therefore fail to state a claim under Section 1983 on which relief may be granted.

---

[6] Plaintiff specifies the applicable sections, but he fails to identify the specific article containing the sections cited. (Compl., ECF No. 1, PageID.17, ¶ 42.) Plaintiff's state constitutional allegations, construed liberally, probably raise claims relating to Article I, §§ 2, 16, and 17. Section 2 relates to equal protection of the laws, Section 16 protects against cruel or unusual punishment, and Section 17 protects against deprivations of life, liberty, or property without due process of law in the course of executive investigations and hearings. Reviewing the entirety of the Michigan Constitution of 1963, that interpretation of Plaintiff's allegations is the only one that makes any sense.

G.    **Claims Regarding the Grievance Process**

Plaintiff filed a grievance relating to Defendants' failure to properly process his "legal mail." Plaintiff contends that Defendants failed to properly handle the grievance. (Compl., ECF No. 12–13, ¶¶ 20–26.) The Court construes Plaintiff's allegations regarding the grievance process to raise claims under the First and Fourteenth Amendments.

As an initial matter, Section 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Moreover, courts have routinely held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances, did not deprive Plaintiff of due process.

Additionally, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the

right to petition protects only the right to address government; the government may refuse to listen or respond). Defendants' actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, for all of the reasons set forth above, Plaintiff has failed to state a claim regarding the grievance process on which relief may be granted.

### H.    Eighth Amendment

Plaintiff claims that Defendants have violated his Eighth Amendment rights, but he does not explain how. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial

of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Based on Plaintiff's allegations, Defendants' actions (or inactions) did not result in any extreme deprivation for Plaintiff. He was not present when the "legal mail" was opened, and he did not get the original affidavit or the envelope. Those consequences simply do not rise to the level of "intolerable conditions for prison confinement." Accordingly, Plaintiff has failed to state a claim for violation of his Eighth Amendment rights on which relief may be granted.

## I.     First Amendment Access to the Courts

Plaintiff suggests that Defendants impeded his access to the courts by delaying the receipt of the affidavit and denying him the original. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to

the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff does not allege facts that support an inference that Defendants' actions (or inactions) as to the mailed affidavit have resulted in a lost remedy. Plaintiff does not even describe "the underlying cause of action." Nonetheless, reviewing the publicly available dockets of the state courts and the federal district courts in the State of Michigan, it appears that on December 11, 2024, Plaintiff filed a motion, presumably a motion for relief from judgment premised upon the affidavit. *See* Register of Actions, *People v. Harris*, No. 11-006975-01-FC (Wayne Cnty. Cir. Ct.). There is nothing in the docket that indicates that Plaintiff has lost any remedy by virtue of delay or by virtue of submitting a copy of the affidavit rather than the stamped original.[7] Accordingly, Plaintiff has failed to state a claim for denial of access to the courts on which relief may be granted.

### J.    First Amendment Right to Receive Mail

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues." (internal quotation marks omitted)).

---

[7] Plaintiff suggests that the 15-day period provided in the prisoner mail policy directive for the MDOC to confirm that the mail was sent by a protected source is contrary to the filing deadlines provided by the Michigan Court Rules of the Federal Rules of Civil Procedure. (Compl., ECF No. 1, PageID.16–17, ¶ 38.) Plaintiff does not allege that he faced any such filing deadline with respect to his affidavit. Plaintiff also suggests that because he received a copy of the affidavit rather than the affidavit that was sent, he was denied the benefit of the raised seal used by the notary when acknowledging the affiant's signature. (*Id*., PageID.11–12, ¶ 19.) Neither the Michigan Court Rules nor the Federal Rules of Civil Procedure require such a seal for affidavits filed in the state or federal courts.

But a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822); *see also Turner v. Safley*, 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell*, 417 U.S. at 822–23; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

The MDOC policy directive regarding mail reflects its protected status. The MDOC's prisoner mail policy acknowledges that prisoners are "permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603." MDOC Policy Directive 05.03.118 ¶ D (eff. Nov. 6, 2023).[8] Nonetheless, a significant goal of the policy directive is to prevent contraband from entering the prison. To achieve that goal, incoming mail is subject to search.

The prisoner mail policy directive identifies several categories of prohibited incoming mail. *Id*. ¶¶ OO–UU. The categories include "mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." *Id*. ¶ PP. With one exception, all incoming mail is "opened in one

---

[8] The MDOC regularly amends its policy directives; it recently amended the policy directive regarding prisoner mail. See MDOC Policy Directive 05.03.118, Prisoner Mail (eff. May 5, 2025), available at https://www.michigan.gov/corrections/public-information/statistics-and-reports/policy-directives (last visited May 20, 2025). The policy directive effective November 6, 2023, however, was the version in effect at the time of the events described in Plaintiff's complaint.

location and inspected . . . to determine if it contains money, controlled substances, or other physical contraband." *Id.* ¶ EE. Physical contraband is confiscated prior to delivery of the mail. *Id.* The policy directive requires that the written content be "skimmed, and if it appears from skimming the content that the mail may violate th[e] policy, the item shall be read to determine if it is allowed." *Id.*

The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a higher standard than those governing general mail. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts).[9] The ability of a prisoner "to receive materials of a legal nature" related to his legal rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).

Because fundamental rights may be stake when "legal mail" is involved, courts have extended protections to prisoners' legal mail that do not exist for general mail. For example,

---

[9] Another right implicated when handling "legal mail" is the Sixth Amendment right to counsel. But that Sixth Amendment right is tied to criminal prosecution; it does not extend to protect communications that occurred before the criminal prosecution began. *See e.g. Gaetano v. United States*, 942 F.3d 727, 732 (6th Cir. 2019). Nor does the Sixth Amendment protection extend beyond the first appeal as of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (observing that the "right to appointed counsel extends to the first appeal of right, and no further"); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (noting that the constitutional right to counsel does not extend to collateral proceedings). To the extent Plaintiff continues to have a relationship with counsel for his present collateral attack, it is not protected by the Sixth Amendment.

Moreover, the protection afforded by the attorney-client privilege, though not a constitutional right, is still a "necessary foundation for the adversarial system of justice." *Sanborn v. Parker*, 629 F.3d at 554, 575 (6th Cir. 2010). The affidavit at issue here, however, is not a confidential communication between attorney and client.

Additionally, access to the courts is fostered by the protections afforded "legal mail." As noted above, however, the handling of Plaintiff's mail here did not hinder his access to the courts.

although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence . . . ." *Kensu*, 87 F.3d at 174 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)). Thus, the one exception to the MDOC's general practice of opening and searching all mail in one location exists for "mail requiring special handling." *Id.* ¶ EE. The most significant category of mail requiring special handling is "legal mail." *Id.* ¶¶ HH–JJ.

The Sixth Circuit Court of Appeals has looked to the definition in the Michigan Administrative Code when considering whether mail sent to or from a prisoner incarcerated with the MDOC is "legal mail." *See, e.g.*, *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (noting that the "Michigan Administrative Code defines 'legal mail' as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, the department of correction's central office staff, and staff of the institution in which the prisoner is incarcerated. *See* Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008)"); *Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (looking to the Michigan Administrative Code for the definition of "legal mail" in Michigan). Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020), *aff'd*, No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. June 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials,'" and "while the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'" (citation omitted)).

23

Critically, the prison official must have some means of knowing that the correspondence is a protected communication. As the Supreme Court commented in in *Wolff v. McDonnell*, 418 U.S. 539 (1974):

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Id*. at 576–77; *see also Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009) (commenting on 28 C.F.R. § 540.19(b), which limits special handling by the Federal Bureau of Prisons to mail where "the envelope is marked with the attorney's name and an indication that the person is an attorney," and "the front of the envelope is marked 'Special mail-Open only in the presence of the inmate'"). Similarly in *ACLU Fund v. Livingston Cnty.*, 796 F.3d 636 (6th Cir. 2015), the Sixth Circuit determined that the letters at issue were protected in significant part because of the information on the envelope: "the letters were addressed to a specific inmate, clearly marked 'legal mail' and included the name and bar number of a licensed Michigan attorney." *Id*. at 644; *see also Kensu v. Haigh*, 87 F.3d 172, 174 (defining " 'legal mail' to include delivery of legal materials to a prisoner, ***properly and clearly marked as legal materials*** . . ." (emphasis added)).

The MDOC definition of legal mail tracks the Michigan Administrative Code:

> Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman . . . is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked "legal mail."

MDOC Policy Directive 05.03.118 ¶ HH (eff. Nov. 6, 2023). The fact that incoming mail falls within the ¶ HH definition does not, standing alone, require special handling. Special handling is

only required if the prisoner requests in writing that his incoming legal mail receive special handling. *Id*. ¶ II.

Plaintiff alleges that he completed and filed a "request for special handling form" when the MDOC took him into custody during the fall of 2014. (Compl., ECF No. 1, PageID.14.) Accordingly, the Court concludes that Plaintiff's "legal mail" is entitled to "special handling." The question as to whether the mail at issue here was "legal mail" remains. In that regard, "what constitutes 'legal mail' is a question of law." *Sallier v. Brooks*, 343 F.3d 868, 871 (6th Cir. 2003). And the Court is not required to accept as true Plaintiff's characterization of the mail at issue as "legal mail" because that is a legal conclusion.[10]

Plaintiff has not provided his copy of the envelope that contained the affidavit, nor has he provided a copy of the affidavit. The facts alleged by Plaintiff, however, indicate that the affidavit was prepared by counsel and signed by the recanting witness. (Compl., ECF No. 1, PageID.11, ¶¶ 16–17.) Moreover, Plaintiff alleges that the envelope was specifically marked "Confidential Information/Attorney Client Privilege Attached/Attorney Work Product." (*Id*. ¶ 16.) But the only factual statement regarding the *sender* of the affidavit is that it came "by way of ACS Professional Investigations." (ECF No. 1-1, PageID.26.) Mail from a hired investigator relating to a collateral

---

[10] When conducting this initial PLRA review, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs*., 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal,* 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Because Plaintiff's complaint is structured and presented as a brief, it is replete with legal arguments and conclusions. Plaintiff's allegation that the mail at issue was "legal mail" is one of many legal conclusions that Plaintiff presents to the Court.

challenge to a criminal conviction is certainly mail of a legal nature; however, it does not fit within the definition of protected "legal mail." Accordingly, Plaintiff has failed to state a First Amendment "legal mail" claim against Defendants on which relief may be granted.

Even if this particular piece of mail had been sent by Plaintiff's retained attorney, and Defendants were able to confirm that fact pursuant to the process specified in the Prisoner Mail Policy Directive—such that the mail would be "legal mail" under the definition set forth above— the isolated instance of interference with legal mail that Plaintiff describes does not rise to the level of a First Amendment violation. The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citation omitted) (discussing that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim" (citing *Sallier*, 343 F.3d at 879–80; *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293

(6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

The Court recognizes that legal mail is entitled to additional protections, and that it is possible that under some circumstances, even one instance of interference with legal mail could violate an inmate's constitutional rights. However, the facts alleged by Plaintiff are not such a circumstance. Plaintiff received a copy of his legal mail. As noted above, the fact that Defendants may have opened the mail outside of Plaintiff's presence did not result in any interference with Plaintiff's right to counsel or his access to the courts. If counsel had sent the mailing, and Defendants were able to confirm that counsel had sent it—facts that Plaintiff does not allege—the Court would not condone the actions of Defendants. Nonetheless, that single instance of interference with Plaintiff's receipt of one piece of legal mail would not be sufficient to state a claim. *See, e.g.*, *Merriweather*, 569 F.3d at 317 (citing *Lavado*, 992 F.2d at 609); *Anderson v. Andrews*, No. 2:09-cv-109, 2010 WL 3475030, at *3 (W.D. Mich. July 1, 2010) ("[T]he opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a claim."), *report & recommendation adopted*, 2010 WL 3474988 (W.D. Mich. Sept. 2, 2010). For this reason as well, the Court concludes that Plaintiff has failed to state a claim for interference with mail on which relief may be granted.

### K.    Supplemental Jurisdiction over State Law Claims

Plaintiff invokes this Court's supplemental jurisdiction over his state-law claims. (Compl., ECF No. 1, PageID.6–7, ¶ 2.) Plaintiff's state law claims suffer the same defects as his federal claims: he offers principally legal conclusions rather than factual allegations.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d

514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

The Court concludes that balancing the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction and Plaintiff's state-law claims will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    May 29, 2025                              /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    United States Magistrate Judge